UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BODUM HOLDING AG and
BODUM USA, INC.,

          Plaintiffs,

-against-

STARBUCKS CORPORATION

          Defendants.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT AND PRODUCT DISPARAGEMENT

Plaintiffs Bodum Holding AG and Bodum USA, Inc. (collectively "Bodum") by their attorneys, Vedder Price P.C., for their Complaint against Defendant Starbucks Corporation ("Starbucks") pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §2201, allege as follows:

### NATURE OF ACTION

1. Bodum seeks a declaratory judgment as to Starbucks's responsibility to assume all costs and expenses associated with the voluntary recall Starbucks initiated for the Recycled French Press, a product covered by the parties' operative agreements. Starbucks unilaterally chose to initiate a voluntary recall of the product despite the fact that the product was not defective, that the product conformed to specifications, and that the product conformed to samples approved by Starbucks. Accordingly, the costs of the recall must be assumed by Starbucks, and not Bodum.

2. In addition to declaratory relief, Bodum seeks damages for product disparagement. As a direct consequence of Starbucks's unwarranted recall, Bodum has suffered significant pecuniary losses and reputational damage.

## THE PARTIES

3. Bodum Holding AG is headquartered in Lucerne, Switzerland and is the parent company of the affiliated companies within the Bodum Group. The "Bodum Group" is a number of affiliated companies dedicated to the design, manufacturing and sale of high-quality housewares products in various countries worldwide.

4. Bodum USA is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Bodum USA is a subsidiary of Bodum Holding AG and is a United States affiliate of the Bodum Group.

5. Bodum USA is in the business of, among other things, importing, distributing, promoting and selling specialty housewares, including non-electric coffee makers and related items under the federally registered trademark BODUM®, throughout the United States, including this Judicial District.

6. Bodum Holding AG and Bodum USA will be collectively referred to herein as "Bodum."

7. Starbucks is a corporation organized and existing under the laws of the State of Washington with its principal place of business in Seattle, Washington. Since 1971, Starbucks Corp., or its predecessor in interest, has continuously conducted business under the trade names "Starbucks," "Starbucks Coffee Company," and "Starbucks Coffee."

8. Starbucks purchases certain housewares products, including non-electric coffee makers and related items, from Bodum Holding AG and Bodum USA and stocks such products for sale in its roasteries and retail stores throughout the United States.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, upon information and belief, the costs of the recall are anticipated to be millions of dollars.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Bodum is a domiciliary of this Judicial District, Starbucks regularly transacts business in this Judicial District, and a substantial part of the events giving rise to the claim for declaratory relief occurred in this Judicial District.

## FACTS COMMON TO ALL COUNTS

*Starbucks and Bodum Collaborate on the Starbucks Recycled French Press*

11. In or about June 2015, Bodum Holding AG's CEO, Joergen Bodum, met with Starbucks' then-director of global merchandising, Lisa Harpster. During that meeting, Mr. Bodum and Ms. Harpster discussed potential plans for Bodum to sell Starbucks an exclusive French press model made of recycled materials (the "Recycled French Press") to be sold in Starbucks retail locations in various markets including the United States, Canada, Europe, the Middle East, Africa, Singapore and Latin America.

12. Following the initial June 2015 meeting, Bodum and Starbucks agreed that the project would go forward, and Bodum began working on samples for Starbucks's consideration.

13. On or about July 8, 2015, Joergen Bodum again met with Lisa Harpster and others at Starbucks, and continued discussions about the progress of the anticipated product.

14. According to Ms. Harpster's notes from that meeting, which she shared via email dated July 8, 2015, Ms. Harpster and other Starbucks personnel discussed design details and

planning logistics surrounding the proposed Recycled French Press design, including proposed colors and possible launch dates for the product in the fall of fiscal year 2015.

15. Bodum consults with a consumer board to obtain recommendations for product design. Said consumer board has recommended against using a flat knob on French press coffee makers. Flat knobs are not inherently defective or unsafe, but Bodum, upon the advice of the consumer board, advises against them in order to achieve a best-quality product.

16. During the design process, Bodum informed Starbucks of the consumer board's recommendation and advised against using a flat knob on the Recycled French Press. Bodum proposed a cone or round shaped knob to be used at the top of the Recycled French Press.

17. Starbucks did not agree, and specifically demanded that a flat knob be used.

18. Bodum manufactured prototype Recycled French Presses pursuant to Starbucks's specifications and provided the prototypes to Starbucks.

19. The prototype products used a flat knob as specified by Starbucks. The knob was manufactured "to-spec" by a company called Simplastic.

20. On information and belief, Starbucks tested the prototype Recycled French Press, which tests included testing the strength of certain individual components of the product.

21. On or about June 6, 2016, after reviewing an initial product prototype, Starbucks personnel informed Bodum personnel that Starbucks was requesting an increase in the strength of the handle but that Starbucks wanted to minimize any increase to the thickness of the handle for aesthetic reasons. Starbucks made no corresponding request concerning the knob.

22. Following the initial request for a flat knob, Starbucks made no further requests for changes to the knob.

23. Bodum agreed to the requested change, and worked with its material suppliers to modify a new prototype.

24. On or about June 22, 2016, Starbucks received additional samples of the Recycled French Press from Bodum. These additional samples incorporated all of Starbucks's requested design changes.

25. Starbucks ultimately approved the final samples of the Recycled French Press.

26. Thereafter, Bodum began production and assembly of the Recycled French Press in its facility in Porto, Portugal.

27. Bodum ordered the flat knob from Simplastic and, during Bodum's assembly process, affixed the knobs manufactured by Simplastic to the production-versions of the Recycled French Press. All Simplastic knobs affixed to the production-versions of the Recycled French Press were made to specification and as contained on the samples approved by Starbucks. The Simplastic knobs affixed to the production-versions of the Recycled French Press can withstand at least 400 Newtons of pressure prior to any breakage of the knob.

28. Throughout the design and manufacturing process, Bodum implemented strict quality control standards, ensuring product safety and integrity.

29. The Recycled French Press with the Simplastic knob was gray in color. The Recycled French Press was assembled with the Simplastic knob from October 2016 through November 2018.

30. No other Bodum French press coffee maker uses (or has ever used) the Simplastic flat knob on the Recycled French Press. This includes all French press coffee makers currently sold in Starbucks stores and, specifically, the current version of the recycled French press coffee maker, which is black in color.

*The Parties' Master Purchasing Agreement*

31.     Bodum and Starbucks had done business involving other product lines for approximately 20 years by the time of the Recycled French Press project came to fruition.

32.     On or about November 12, 2002, Bodum and Starbucks entered into a Master Purchasing Agreement (the "MPA").  Generally, and among other things, under the MPA, Starbucks was to purchase certain "Approved Products" from Bodum to be sold in its retail locations across the globe.

33.     The MPA was subsequently amended several times, including the April 30, 2013 Third Amendment and Supplement to Master Purchase Agreement ("Third Amendment").

34.     The initial term of the MPA was for two years, starting on the "Effective Date" of October 1, 2002.  (MPA ¶ 22.1).  But following the expiration of the initial two-year term, the MPA remained "in effect for as long as Bodum supplies Approved Products to Starbucks, unless terminated in accordance with [the MPA]."  (*Id.*)

35.     The MPA provides that the "Approved Products" (listed in Schedule 2 of the MPA) are to be purchased and sold through purchase orders.  (MPA ¶ 2.1; Third Amendment to MPA ¶ 2.)  The "Approved Products" may change from time to time by mutual written agreement of the parties.  However, the purchasing process—through a purchase order—remains the same.  (*Id.*)

36.     The Starbucks Recycled French Press is an Approved Product as defined by the MPA.

37.     The MPA also addresses the manner in which Starbucks can make changes to purchase orders.  (MPA ¶ 2.3.)

38. The MPA also provides for the respective responsibility of the parties in the event of a product recall:

> Product Withdrawals of Recalls: In the event Bodum or Starbucks discovers or acquires any information indicating that any Approved Product does not confirm to the specification or approved samples or contains another Defect, and Starbucks determines, in its sole discretion, that such failure to conform or Defect creates a risk of personal injury to the public from any cause whatsoever, Starbucks may take and may request Bodum to take such steps as are necessary and appropriate to protect the interests of the public including without limitation recalling the Approved Product from the public, marking the Approved Product with appropriate warnings and withdrawing the Approved Product from sale. Bodum shall bear the cost of the recall or other remedial action. Bodum shall send a copy of its recall procedure to Starbucks within thirty (30) days of execution of this Agreement.

(MPA ¶ 9.8.)

39. The MPA also provides that it is to be "construed and governed in all respects in accordance with Washington law." (MPA ¶ 23.6.)

*Starbucks Contacts Bodum about Recycled French Press Customer Complaints*

40. In January 2019, Starbucks's in-house counsel contacted Bodum about alleged consumer complaints involving the Recycled French Press.

41. According to Starbucks, nine consumers in the United States and Canada had separately complained of lacerations to their hands between March 2018 and January 2019 after the knob of the Recycled French Press was broken during use.

42. On or about January 24, 2019, Starbucks, and its outside counsel of Mintz Levin, along with Bodum and its outside counsel, Vedder Price P.C., had the first of several conference calls to discuss the alleged consumer complaints, and to collaborate on an appropriate

investigation to determine whether any "corrective action" was required under the applicable CPSC regulations.

43. During these conference calls in or around January 2019, the parties and counsel agreed that the investigation should include product testing and consultation with an expert.

44. The common goal of the product testing and expert analysis was to determine if the alleged consumer complaints were the result of a defect, or if they were indicative of consumer misuse.

*Bodum Cooperates with Starbucks's Investigation and Product Testing*

45. Throughout January and February 2019, Bodum, through its counsel, cooperated with Starbucks's request for expedited product testing.

46. In or about late January 2019, Bodum had begun some preliminary product testing at an SGS Laboratory in Hong Kong.

47. On or about February 7, 2019, Starbucks, through its outside counsel, informed Bodum that it wanted to use a U.S.-based lab and ultimately an SGS lab in Fairfield, New Jersey was chosen.

48. Bodum cooperated with Starbucks's request, and through its counsel, immediately began working with the technical managers at the SGS Laboratory in Fairfield, New Jersey to get a product testing protocol finalized.

49. Bodum did not store or keep significant stock volume of the Recycled French Press. Therefore, to conduct testing on an adequate sample size, Bodum requested that Starbucks ship samples to the SGS Laboratory in New Jersey.

50. In early February 2019, Starbucks inadvertently shipped the samples to the wrong address, which delayed the start time for the product testing.

51. Despite this delay, Bodum and its counsel remained diligent and consistently followed up with the SGS Laboratory personnel to obtain status and timing updates.

*Testing at SGS Laboratory in Fairfield, New Jersey*

52. In or around February 2019, a two-phase testing protocol was finalized and testing at the SGS Laboratory in Fairfield, New Jersey began.

53. Phase one of the testing protocol was designed to determine the force generated by "actual use" of the Recycled French Press. To account for the fact that different users may push the plunger down faster than others, the phase one testing was conducted at three different speeds (100 mm/minute; 300 mm/minute; and 500 mm/minute).

54. Phase two of the testing protocol was designed to evaluate the amount of force necessary to break the knob of the Recycled French Press. To do this, the SGS Laboratory technicians used an Instron device to depress the plunger using a load fixture. The device applied pressure until the plunger rod pierced through the knob and recorded the maximum pressure applied at the point of puncture ("puncture force testing").

55. On February 21, 2019, the SGS Laboratory provided preliminary test results of phase one.

56. On or about March 5, 2019 the SGS Laboratory provided its final report, including both phase one and phase two testing results.

57. The average result of the phase one ("actual use") testing was 29.9 Newtons (when compressed at 100 mm/minute), 22.6 Newtons (when compressed at 300 mm/minute) and 25.9 Newtons (when compressed at 500 mm/ minute).

58. The result of the phase one ("actual use") testing demonstrated that even at the fastest speed the Instron machine was capable of (500 mm/minute), an average of only 25.9

Newtons of force was generated. This means that the average consumer, following the instructions that accompany the Recycled French Press, would apply approximately 5.8 pounds of force to depress the plunger.

59. Notably, there was no reported breakage during any phase one testing.

60. The average result of phase two—the puncture force testing—was 403.7 Newtons. This result converts to approximately 90.75 pounds of force.

61. The phase two average result suggested that on average, approximately 90.75 pounds of force needed to be applied to the knob of the Recycled French Press before the knob would break or cause exposure to the plunger rod.

62. Bodum retained an engineering expert, James Salmon, Ph.D., P.E., of Caufield Engineering.

63. On March 6, 2019, Dr. Salmon reviewed and interpreted the SGS testing results.

64. On March 7, 2019, Dr. Salmon participated in a conference call with Starbucks's outside counsel and Bodum's outside counsel. During this call, Dr. Salmon provided his tentative opinion that based only on the available data and without the benefit of accident pictures, it would be premature to conclude that a recall was necessary or appropriate. Dr. Salmon stated that application of 90 pounds of force to the product (nearly 10 times the average force value of the phase one "actual use" testing) was borderline abuse of the product. Dr. Salmon recommended that further human factor testing be employed.

65. During this call, Starbucks's outside counsel stated that he would review this information with his client.

66. Following the review of the SGS testing results on March 6 and 7, 2019, the parties had a series of subsequent conference calls with outside counsel participating. During these

calls, Bodum expressed its opposition to the recall, noting that there was no evidence of a product or design defect and urging that further analysis from a qualified expert was necessary. At a minimum, Bodum encouraged Starbucks to present the testing and preliminary expert statements to the CPSC and seek their guidance under the standards for corrective action.

67. On or about March 11, 2019, Starbucks notified Bodum that despite Bodum's objections, Starbucks would be proceeding with a voluntary fast track recall.

68. Thereafter, in or about mid-March 2019, during a conference call with all parties present and their respective outside counsel present, Starbucks's in-house counsel stated that it was Starbucks's position that Bodum should be responsible for the costs of the recall.

69. The voluntary recall Starbucks initiated was not necessary or appropriate.

70. The voluntary recall Starbucks initiated was motivated in part by a desire to "repair a relationship with the CPSC."

71. On more than one conference call between January and March 2019, Starbucks's in-house counsel stated that the company was particularly sensitive to recall issues and did not want to delay the initiation of a voluntary recall because Starbucks had paid significant fines in a prior recall involving its Teavana product.

72. The voluntary recall Starbucks initiated was not due to a product defect, nor due to a failure to conform to specifications or approved samples.

73. The voluntary recall Starbucks initiated was motivated in part, additionally and on information and belief, so that Starbucks could falsely disparage Bodum's products in an effort to evade Starbucks obligations to Bodum with regard to selling retail products made by Bodum's competitors embodying the designs of Bodum products.

*Starbucks Announces Recall*

74. On April 30, 2019, Starbucks announced the voluntary recall through a press release (the "Press Release") on the CPSC's website and its own website. A true and correct copy of the Press Release is attached hereto as **Exhibit 1**.

75. The press release contains inaccurate and incomplete information. Specifically, the Press Release did not announce the product's most identifiable feature to consumers (the gray color of the Recycled French Press at issue).

76. Starbucks's unilateral actions are already causing Bodum significant brand damage.

77. There has been backlash to Bodum from the press about the recall. Starbucks has created an impression that Bodum French presses in general are defective.

78. To date, Bodum's brand has been negatively impacted by news articles reporting on the recall, published by NBC, *The New York Times*, and *The Wall Street Journal*, among others.

79. On April 30, 2019, Starbucks's outside counsel informed Bodum's counsel that the voluntary recall was being expanded to European, Middle Eastern, Central Asian Pacific, and Latin American markets. In short, the voluntary recall is now taking place in locations where there was not a single reported incident. This has caused and will cause unacceptable damage to the Bodum brand worldwide and is completely unwarranted.

80. Bodum is further being impacted negatively from publicity about the recall in locations where the Recycled French Press is not sold, such as Australia, in which locations consumers are being led to believe that Bodum's products in that location are defective.

## COUNT I: DECLARATORY JUDGMENT

81. Bodum repeats and incorporates by reference each and every allegation set forth in paragraphs 1 through 80, inclusive.

82. There exists an actual, imminent and justiciable controversy between Bodum and Starbucks regarding Starbucks's duty to assume all costs of the voluntary, unilateral recall of the Recycled French Press.

83. Resolution of this issue through the declaratory judgment procedure will enable the parties to adjudicate their rights at this time and thereby avoid any possible harm from delay in resolving the issue.

84. Bodum therefore requests a judicial determination that Starbucks, not Bodum, is required to assume responsibility for any and all expenses associated with the voluntary, unilateral recall of the Recycled French Press.

## COUNT II: PRODUCT DISPARAGEMENT

85. Bodum repeats and incorporates by reference each and every allegation set forth in paragraphs 1 through 84, inclusive.

86. On April 30, 2019, Starbucks published a press release with the CPSC, which contained incomplete and inaccurate information, including but not limited to an omission of the color of the product. Taken together, these omissions constitute a false statement.

87. Additionally, Starbucks's unilateral actions have created a false narrative that Bodum manufactures defective products.

88. The incomplete and inaccurate information published by Starbucks in the April 30, 2019 press release, and the resulting media coverage, is harmful to Bodum's reputation, and

has caused significant strains on existing customer relationships, commercial dealings and sales efforts with prospective customers.

89. The false information has also negatively impacted the reputation of the quality of Bodum's products, a reputation that Bodum has spent years building.

90. Upon information and belief, Starbucks published this false material with the intention of causing harm to Bodum's pecuniary interests, including but not limited to Starbucks desire to cancel existing purchase orders, and avoid obligations to pay for said orders.

91. Upon information and belief, Starbucks published this false material with the intention of causing harm to Bodum's pecuniary interests by utilizing the recall as a means to circumvent certain exclusivity provisions contained in other agreements between the parties.

92. Starbucks's statements have impugned the quality or integrity of Plaintiffs' goods or services.

93. As a direct result of Starbucks's product disparagement, Bodum has suffered special damages.

WHEREFORE, Plaintiffs Bodum Holding AG and Bodum USA, Inc., request that this Court enter judgment against Defendant Starbucks Corporation:

(a) A declaratory judgment that paragraph 9.8 of the Master Purchasing Agreement does not require Bodum to pay for costs of Starbucks's voluntary recall;

(b) A declaratory judgment that Starbucks is completely responsible for the costs of the Recycled French Press recall;

(c) An award of damages for the reputational damage and loss of pecuniary interest Bodum has suffered;

(d) Costs and expenses incurred in pursuing this action, including reasonable attorneys' fees to the extent permitted by law; and

(e) Such other relief as the Court deems just and proper.

Dated: New York, New York  
May 10, 2019

Respectfully submitted,

By: s/ Daniel Green  
Daniel Green  
VEDDER PRICE P.C.  
1633 Broadway 31st Floor  
New York, New York 10019  
T: +1 212 407 7700  
dgreen@vedderprice.com

Nicole J. Wing – *Pro hac vice to be filed*  
VEDDER PRICE P.C.  
222 North LaSalle Street  
Chicago, Illinois 60601  
T: +1 312 609 7500  
nwing@vedderprice.com

Attorneys for Plaintiffs  
BODUM HOLDING AG and BODUM USA, INC.