UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BODUM HOLDING AG, BODUM
USA, INC., BODUM AG, AND PI-
DESIGN AG,

                          Plaintiffs,

          – against –

STARBUCKS CORPORATION,

                          Defendant.

<u>**OPINION & ORDER**</u>

19 Civ. 4280 (ER)

<u>R</u>AMOS, D.J.:

      Bodum Holding AG, Bodum USA, Inc., Bodum AG, and Pi-Design AG ("Bodum") bring this suit against Starbucks Corporation ("Starbucks") concerning issues related both to Starbucks's alleged independent dealings with Bodum suppliers and to Starbucks's recall of a Bodum-supplied Recycled French Press (the "French Press").  Specifically, Bodum brings claims for declaratory judgment, product disparagement, and breach of contract.  Doc. 28.  Before the Court is Starbucks's motion to dismiss Bodum's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 30.

      For the reasons set forth below, Starbucks's motion is GRANTED.

## I.   BACKGROUND

### A. Factual Background

*1. The Parties' Contractual Agreements*

      Bodum Holding AG, a corporation headquartered in Switzerland, is the parent company of Bodum USA, Bodum AG, and Pi-Design AG, affiliated Bodum group companies.  Doc. 28 ¶ 4.  Bodum USA is a corporation organized and existing under Delaware law with its principle place of business in New York.  *Id.* ¶ 5.  Bodum AG is headquartered in Switzerland and is in the business of importing, distributing, and selling specialty houseware items.  *Id.* ¶ 7.  Pi-Design AG is headquartered in Switzerland and is in the business of design, development, and licensing of specialty housewares.  *Id.* ¶ 8.  Starbucks is incorporated in Washington and has its principle

place of business in Washington.  *Id*. ¶ 10.  It purchases houseware products, including non-electric coffee makers like the French Press, from Bodum and sells such products in its retail stores.  *Id.* ¶¶ 10–11.

For purposes of the instant motion, there are two relevant agreements between the parties.  First, in 2002, Bodum and Starbucks entered into a Master Purchaser Agreement (the "MPA"), governing the terms under which Starbucks was to purchase approved products from Bodum.[1] *Id.* ¶ 35.  The MPA is governed by Washington law.  *Id.* ¶ 55.  Since 2002, the parties have amended the MPA several times, including in 2013.  *Id.* ¶ 36.  The amended MPA limits Starbucks's ability to deal with certain suppliers, providing that Starbucks must consult with Bodum prior to engaging with alternative suppliers to design, develop, and/or purchase any products covered by the amended agreement.  *Id.* ¶ 56.  The agreement also lists certain "Approved Products," and provides that Starbucks will not purchase goods similar to such products from Bodum suppliers."  *Id.* ¶ 53.  The Bodum suppliers with which Starbucks is prohibited from independently dealing are defined in the MPA, though this list may be amended by mutual agreement of the parties.  Doc. 31-1, Ex. A at 7–8; Doc. 28 ¶ 54.

Second, in 2008, the parties entered into a Confidential Settlement Agreement stemming from a lawsuit brought by Bodum alleging that Starbucks infringed on Bodum's designs.  Doc. 28 ¶ 45.  As part of this agreement, Starbucks agreed that it would not intentionally copy Bodum's designs or sell non-Bodum products that intentionally embody Bodum designs.  *Id.* ¶¶ 46–47.  Additionally, "Starbucks cannot stock products with these designs without Bodum's approval, and Starbucks cannot use Bodum's Suppliers to circumvent Starbuck's obligations on this front."  *Id*. ¶ 51.

### 2.  *Use of Bodum Suppliers*

Bodum claims that Starbucks is in breach of contract because it used two Bodum suppliers, ML Glass and Ningbo Worldcrown, to manufacture products for sale in Starbucks

---

[1] The French Press, described below, was later developed by Bodum for Starbucks in 2015 and is covered by the MPA.  Doc. 28 ¶¶38-39.

stores.  *Id.* ¶ 110.  Bodum does not describe what ML Glass and Ningbo Worldcrown manufacture, but states only that it introduced these suppliers to Starbucks, and that Starbucks later audited them and approved them as suppliers.  *Id.*  ¶¶ 110, 112–113.  Bodum does not provide any information on when Bodum introduced these suppliers to Starbucks, when or how Starbucks audited them, if and when Starbucks used them in connection with Bodum, or when Starbucks began using them without Bodum.  *Id.* ¶¶ 110–114.

Neither ML Glass nor Ningbo Worldcrown are listed in the MPA as suppliers with whom Starbucks may not independently deal.  Doc. 31-1, Ex. A at 7–8.  However, Bodum alleges that Starbucks's auditing process constituted a mutual agreement to amend the MPA to include ML Glass and Ningbo Worldcrown on the list of prohibited suppliers.  Doc. 28 ¶¶ 112–113.[2]  Even after this auditing process, Starbucks allegedly used these suppliers to manufacture Bodum designs without Bodum's approval.  *Id.* ¶ 135.  Starbucks's dealings with ML Glass and Ningbo Worldcrown allegedly cause Bodum to suffer a significant loss of sales.  *Id.* ¶ 114.

### 3. *The Recycled French Press Recall*

Separately, Bodum seeks a declaratory judgement that Starbucks is responsible for costs associated with a recall and brings a claim for product disparagement.  These claims stem from Starbucks's 2019 recall of a Bodum French Press.

Bodum and Starbucks began working on the French Press in 2015.  In June of that year, Starbucks's director of global merchandising, Lisa Harpster, initiated discussions with Bodum Holding AG's CEO, Joergen Bodum, about potential plans for a French Press product to be sold exclusively in Starbucks stores.  *Id.* ¶ 14.  Following a June 2015 meeting, Bodum and Starbucks agreed that the project would go forward, and Bodum began developing the product.  *Id.* ¶ 15. Between June 2015 and June 2016, Bodum developed a French Press for retail in Starbucks stores, designed and manufactured "to spec" in accordance with Starbucks's requests.  *Id.* ¶¶ 17, 19–26.  After Starbucks's final approval on or about June 22, 2016, Bodum began production and

---

[2] Though not discussed in its complaint, in later briefing Bodum argues that the paper trail created by the audit suffices to meet the MPA's requirement that amendments be made in writing.  Doc. 36 at 9.

assembly of the French Presses. *Id.* ¶¶ 27–28. The French Press is an "Approved Product" whose purchase and sales between Bodum and Starbucks is governed by the MPA. *Id.* ¶¶ 38–39.

Between March 2018 and January 2019, Starbucks received nine consumer complaints regarding hand lacerations caused by French Press knobs broken during use. *Id.* ¶ 58. Starbucks initiated a product investigation in January 2019. *Id.* ¶¶ 57–59. Bodum cooperated with Starbucks's investigation, and shipped samples to SGS Laboratory, a product testing facility chosen by Starbucks. *Id.* ¶¶ 62–66. Testing determined that the average consumer following instructions accompanying the French Press would apply about 5.8 pounds of force to depress the French Press plunger. *Id.* ¶¶ 74–75. Testing also determined that on average about 90.75 pounds of force were required before the knob would break or expose the plunger rod. *Id.* ¶¶ 77–78. An expert retained by Bodum, James Salmon, interpreted these results and provided a tentative opinion based on the available information, stating that it was premature to conclude that a product recall was necessary or appropriate. *Id.* ¶¶ 79–81. Salmon stated that 90 pounds of force was "borderline abuse" of the product. *Id.* ¶ 81. Despite Bodum's objections that there was no evidence of product or design defect, Starbucks notified Bodum on March 11, 2019 that it would nevertheless proceed with a voluntary fast-track recall. *Id.* ¶ 83. Bodum alleges that this voluntary recall was not due to a product defect or failure to conform to product specifications, but rather was motivated by Starbucks's desire to disparage Bodum products and to sell non-Bodum products embodying Bodum designs, thereby evading its contractual obligations. *Id.* ¶ 90.

On April 30, 2019, Starbucks issued a press release announcing the recall. *Id.* ¶ 91. The front page of the press release featured a black French press coffee maker, even though the product Bodum actually supplied to Starbucks was gray. *Id.* ¶¶ 92–95. However, the third page of the press release stated that the recalled French Press was gray. *Id.* ¶ 95. The press release also stated that there were nine incidents of injury, but, according to Bodum, at least some of those complaints did not identify the French Press as the offending product. *Id.* ¶¶ 97, 99. Bodum also alleges that Starbucks made inaccurate statements concerning the recall to an Italian

partner and to its Latin American locations, inaccurately stating that certain products were being recalled that were not.  *Id.* ¶¶ 100–102.

### B.  Procedural History

On May 10, 2019, Bodum brought suit against Starbucks, seeking a declaratory judgment and bringing a claim for product disparagement.  Doc 1.  Following an August 15, 2019 pre-motion conference, Bodum filed its First Amended Complaint on August 22, 2019, in which it added a claim for breach of contract.  Doc. 22.  By agreement of parties and with leave of the Court, Bodum then filed a Second Amended Complaint to correct the parties' names.  Doc. 28. In Bodum's Second Amended Complaint, it brings three counts:  (1) it seeks a declaratory judgment that Starbucks is responsible for expenses associated with the French Press recall; (2) it brings a claim for product disparagement based on Starbucks's allegedly false statements; and (3) it brings claims for breach of contract, alleging both that Starbucks breached the MPA and the 2008 Settlement Agreement by utilizing Bodum suppliers to manufacture products embodying Bodum designs and by purchasing non-Bodum products that embody Bodum designs.

On September 20, 2019, Starbucks filed the instant motion to dismiss Bodum's breach of contract claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  Doc. 30.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 556).

---

[3] As an initial matter, Bodum argues that Starbucks's motion must fail because there was no pre-motion conference regarding this motion.  While this Court generally requires a pre-motion conference before certain motions, at the August 15, 2019 pre-trial motion the Court indicated that Starbucks could file a motion to dismiss without requesting additional pre-motion conferences.  Starbucks later verified with the Court that a pre-motion conference was not required for the instant motion.  Doc. 40, Ex. A.

However, this "flexible 'plausibility standard' " is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berry*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

## III.   DISCUSSION

Starbucks argues that Bodum's breach of contract claim must be dismissed because it is inadequately pleaded.[4]  First, Starbucks argues that Bodum fails to show that the MPA covers

---

[4] While Bodum's complaint characterizes Starbucks's alleged breach of contract as only one claim, subsequent briefing by both Starbucks and Bodum characterize the claim under two theories of liability based in two contracts, the MPA and the 2008 Settlement Agreement.

Starbucks's dealings with ML Glass and Ningbo Worldcrown because neither is defined as a "Bodum Supplier" under the contract.  In turn, Bodum argues that while the written instrument does not list ML Glass or Ningbo Worldcrown, the fact that Starbucks learned about these suppliers through Bodum, as well as Starbucks's subsequent auditing of them, constitute an amendment to the MPA.

Second, Starbucks argues that Bodum's allegations regarding its sale of non-Bodum products that embody Bodum designs are devoid of factual support.  Bodum concedes that it has not provided facts about which Starbucks products violate the 2008 Settlement Agreement.  However, it maintains that it is not required to provide these facts at this stage.  Additionally, Bodum argues that the Court should draw a reasonable inference to conclude that ML Glass and Ningbo Worldcrown supply Bodum-like products to Starbucks.

The Court agrees with Starbucks on both points.

**A.  Breach of MPA**

Starbucks argues that the complaint fails to establish that the MPA prohibited it from dealing with ML Glass and Ningbo Worldcrown.  The MPA states that Starbucks may not deal with certain Bodum suppliers for goods or services similar to the Approved Products that the supplier provides to Bodum.  There is no dispute that ML Glass and Ningbo Worldcrown are not specifically listed as Bodum suppliers in the MPA.  Doc. 31-1, Ex. A at 7–8.  However, Bodum argues that the two are nonetheless covered by the terms of the MPA by virtue of the fact that Bodum introduced them to Starbucks and that Starbucks subsequently audited them.  Doc. 36 at 13–14.  This auditing process, it maintains, constituted an amendment to the MPA.  *Id*.  This argument is unconvincing.

Under Washington law, "[t]he burden of proving that the parties intended to modify the earlier agreement rests upon the party asserting the modification."  *Flower v. T.R.A. Indus., Inc.*, 127 Wash. App. 13, 27–28, (2005) (citing *Hanson v. Puget Sound Navigation Co.,* 52 Wash. 2d 124, 127 (1958).  "Modification of a bilateral contract requires a meeting of the minds as well as consideration separate from that of the original contract."  *Duncan v. Alaska USA Fed. Credit*

*Union, Inc.*, 148 Wash. App. 52, 74, 199 P.3d 991, 1002 (2008) (citations omitted).  "Washington follows the objective manifestation test for contracts," requiring objective manifestation of mutual assent, sufficiently definite terms, and consideration, all to "avoid trapping parties in surprise contractual obligations."  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash. 2d 171, 177–78 (2004) (internal quotation marks and citations omitted).  Such intent must be objectively manifested in order to form a contract.  *Id.* (citing *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima,* 122 Wash.2d 371, 388 (1993); *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F. Supp. 491, 497 (S.D.N.Y. 1987)).

Bodum argues that because Starbucks learned of the suppliers through Bodum and subsequently audited the suppliers, they are now within the scope of the MPA.  Doc. 28 at 17. However, Bodum provides absolutely no support for its proposition that an auditing process, which is by definition a unilateral and preliminary step by Starbucks, constitutes mutual agreement of the parties to amend the MPA.  Nor does it suggest that this is contemplated by the MPA.  Reference to an auditing process, with nothing more, does not suffice to show an agreement to amend.  In other words, simply stating that Starbuck's approval of suppliers through an auditing process constitutes mutual agreement does not make it so.  *See, e.g.*, *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract."); *Posner v. Minnesota Mining & Mfg. Co.,* 713 F. Supp. 562, 563–64 (E.D.N.Y. 1989) (dismissing a breach of contract claim, even under the more lenient standard for *pro se* plaintiffs, where "[a]lthough the existence of a contract is alleged, plaintiffs fail to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting the formation of an agreement").  While Bodum cites *City of Union Gap v. Printing Press Properties, L.L.C.* for the proposition that conduct subsequent to the signing of an agreement can inform a court's interpretation of intent at the time of signing, this case is inapposite.  409 P.3d 239, 251–52 (Wash. Ct. App. 2018).  *Union Gap* concerns the

interpretation of contract terms, while the instant case concerns whether or not parties actually modified the contract to include additional terms.

In the absence of an amendment, the Court relies on the terms of the MPA, which does not prohibit Starbucks from dealing with the suppliers at issue.  Bodum has therefore failed to state a claim upon which relief can be granted, and its claim stemming from these allegations is dismissed without prejudice.

### B.  Breach of Settlement Agreement

Starbucks argues that Bodum also fails to adequately plead breach of the 2008 Settlement Agreement because it does not identify any relevant products or designs that Starbucks purchased.  Bodum counters that the Court (and, presumably, Starbucks) can reasonably infer that the products supplied by ML Glass and Ningbo Worldcrown embody Bodum designs.  The Court disagrees.

Bodum misunderstands the pleading standard.  Although *Twombly* and *Iqbal* do not prescribe a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d at 50 n.3, Bodum must still do more than "tender[] 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678.  While Bodum is correct to observe that the Court may draw reasonable inferences from the alleged facts, Doc. 36 at 16, the Court must nevertheless dismiss if plaintiffs "fail[] to allege non-speculative facts that would support" claims, *U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*, 13-cv-6989, 2014 WL 7714382, at *6 (S.D.N.Y. Nov. 14, 2014) (dismissing claim for breach of contract where complaint was "rife with conjecture").  Here, Bodum provides no facts to show that Starbucks procured products embodying Bodum designs from non-Bodum suppliers.  Bodum provides no facts regarding which Bodum designs were used or which products allegedly embody these designs.  Neither does it provide *any* information about ML Glass and Ningo Worldcrown and the kinds of products they produce, or the particulars of their relationship with Starbucks.  Simply reciting the terms of the contract and claiming a breach, without reference to even a single alleged breach of obligation, is not enough to withstand a Rule 12(b)(6) motion to dismiss.  *Berman*, 580 F. Supp.

2d at 202 ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.").  As such, this claim must also be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, Bodum's breach of contract claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 30.

It is SO ORDERED.

Dated:   May 22, 2020
         New York, New York

_____
           EDGARDO RAMOS, U.S.D.J.