UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BODUM HOLDING AG, BODUM
USA, INC., BODUM AG, AND PI-
DESIGN AG,

Plaintiffs,

– *against* –

STARBUCKS CORPORATION,

Defendant.

**OPINION AND ORDER**

19 Civ. 4280 (ER)

RAMOS, D.J.:

Bodum Holding AG, Bodum USA, Inc., Bodum AG, and Pi-Design AG
("Bodum") bring this suit against Starbucks Corporation ("Starbucks") concerning issues
related to Starbucks's alleged independent dealings with Bodum suppliers and
Starbucks's recall of a Bodum-supplied French press coffee maker (the "French Press").
In its Second Amended Complaint, Bodum asserts claims for declaratory judgment and
product disparagement.  In response, Starbucks brings counterclaims for declaratory
judgment and breach of contract.  Pending before the Court is Bodum's motion to dismiss
counterclaim I (for declaratory relief) and motion for leave to file a Third Amended
Complaint.  *See* Doc. 68; Doc. 69.

For the following reasons, Bodum's motion for leave to amend its complaint is
GRANTED in part and DENIED in part, and its motion to dismiss the counterclaim is
GRANTED.

I.      **BACKGROUND**

        **A. Factual Background**

        *1. The Parties' Contracts*

The Court assumes familiarity with the parties and its prior opinion in this case, *Bodum Holding AG v. Starbucks Corp.*, No. 19 Civ. 4280 (ER), 2020 WL 2731987 (S.D.N.Y. May 22, 2020).

For purposes of the instant motion, there are two relevant agreements between the parties. First, in 2002, Bodum and Starbucks entered into a Master Purchase Agreement (the "MPA"), governing the terms under which Starbucks was to purchase products from Bodum. Doc. 28 ¶ 35. The MPA is governed by Washington law. *Id.* ¶ 55. The MPA lists certain "Approved Products" and provides that Starbucks will not purchase goods similar to such products directly from Bodum suppliers that are specifically listed in the MPA ("Bodum Suppliers"). *Id.* ¶ 53–54; Doc. 31-1, Ex. A at 7–8. The MPA states that "'Bodum Suppliers' means one, several or all of the entities described" in that list, and notes that the parties may amend that list by mutual agreement. Doc. 76-1 at 7.

 Since 2002, the parties have amended the MPA several times, including in 2013 (the "Third Amendment"). Doc. 28 ¶ 36. The Third Amendment states that the list of Bodum Suppliers in the MPA "is hereby deleted in its entirety and replaced with" a list attached to the Third Amendment; that list includes some of the Bodum Suppliers listed under the original MPA. *See* Doc. 76-1 at 12, 15. The Third Amendment refers to "Bodum Suppliers" as "suppliers [that] are identified" in that new list. *Id.* at 12. Further, the Third Amendment provides that "[t]he parties may mutually agree at any time to update, revise, or amend" the list of Bodum Suppliers "by entering into a written agreement." *Id.* According to the Third Amendment, "Starbucks agrees that it shall not engage or retain any Bodum Supplier . . . to manufacture or produce any product other than an Approved Product." *Id.* Additionally, the Third Amendment requires that Starbucks "consult with Bodum prior to engaging an alternative supplier to design, develop, and/or purchase" any products covered under the MPA. *Id.* at 13.

Second, in 2008, the parties entered into a Confidential Settlement Agreement ("2008 Settlement Agreement") stemming from a lawsuit brought by Bodum alleging that

Starbucks infringed on Bodum's designs.  Doc. 28 ¶ 45; Doc. 76-2 at 2.  The 2008

Settlement Agreement is governed by Illinois law.  Doc. 76-2 at 3.  As part of that

agreement, Starbucks agreed that it would not intentionally copy Bodum's designs or sell

non-Bodum products that intentionally embody Bodum's designs.  Doc. 28 ¶ 46–47; Doc.

76-2 at 2.  Additionally, "Starbucks cannot stock products with these designs without

Bodum's approval, and Starbucks cannot use Bodum's Suppliers to circumvent

Starbucks's obligation on this front."  Doc. 28 ¶ 51.  The 2008 Settlement Agreement lists

Starbucks as the contracting party but releases Starbucks's affiliates from any obligation

under the agreement.  Doc. 71-1 ¶ 115; *see also* Doc. 76-2 at 2.

### 2. The Recycled French Press Recall

Bodum and Starbucks began working on the French Press in 2015.  In June of that

year, Starbucks's director of global merchandising initiated discussions with Bodum

Holding AG's CEO about plans for a French Press product to be sold exclusively in

Starbucks stores.  Doc. 28 ¶ 14.  Following a June 2015 meeting, Bodum and Starbucks

agreed that the project would go forward, and Bodum began developing the product.  *Id.*

¶ 15.  Bodum developed the French Press "to spec" in accordance with Starbucks's

requests.  *Id.* ¶¶ 17, 19–26.  Starbucks gave its final approval on June 22, 2016.  *Id.* ¶¶

27–28.  The French Press is an "Approved Product" whose purchase and sales between

Bodum and Starbucks is governed by the MPA.  *Id.* ¶¶ 38–39.

Between March 2018 and January 2019, Starbucks received nine consumer

complaints regarding hand lacerations caused by French Press knobs broken during use.

*Id.* ¶ 58.  Starbucks initiated a product investigation in January 2019.  *Id.* ¶¶ 57–59.

Bodum cooperated with Starbucks's investigation, and shipped samples to SGS

Laboratory, a product testing facility chosen by Starbucks.  *Id.* ¶¶ 62–66.  Testing

determined that the average consumer following instructions accompanying the French

Press would apply about 5.8 pounds of force to depress the French Press plunger.  *Id.* ¶¶

74–75.  Testing also determined that on average about 90.75 pounds of force were

required before the knob would break or expose the plunger rod.  *Id.* ¶¶ 77–78.  An expert retained by Bodum interpreted these results and provided a tentative opinion based on the available information, stating that it was premature to conclude that a product recall was necessary or appropriate.  *Id.* ¶¶ 79–81.  That expert stated that 90 pounds of force was "borderline abuse" of the product.  *Id.* ¶ 81.

Despite Bodum's objections that there was no evidence of product or design defect, Starbucks notified Bodum on March 11, 2019 that it would nevertheless proceed with a voluntary fast-track recall.  *Id.* ¶¶ 83–84.  Bodum alleges that this voluntary recall was not due to a product defect or failure to conform to product specifications, but rather was motivated by Starbucks's desire to disparage Bodum products and to sell non-Bodum products embodying Bodum designs, thereby evading its contractual obligations.  *Id.* ¶¶ 89–90.

On April 30, 2019, Starbucks issued a press release announcing the recall.  *Id.* ¶ 91.  The front page of the press release featured a black French press coffee maker, even though the product Bodum actually supplied to Starbucks was gray.  *Id.* ¶¶ 92–95.  However, the third page of the press release stated that the recalled French Press was gray.  *Id.* ¶ 95.  The press release also stated that there were nine incidents of injury, but, according to Bodum, at least some of those complaints did not identify the French Press as the offending product.  *Id.* ¶¶ 97, 99.  Bodum also alleges that Starbucks made inaccurate statements concerning the recall to an Italian partner and to its Latin American locations, inaccurately stating that certain products were being recalled that were not.  *Id.* ¶¶ 100–102.

**B. Procedural History**

On May 10, 2019, Bodum brought suit against Starbucks, seeking a declaratory judgment and bringing a claim for product disparagement.  Doc. 1.  Specifically, Bodum alleged that Starbucks improvidently instituted the 2019 recall of the French Press and is therefore responsible for costs associated with it.  *Id.*  Bodum subsequently filed its First

4

Amended Complaint on August 22, 2019, adding a claim for breach of contract.  Doc. 22.
Specifically, Bodum claimed that Starbucks is in breach because it used two Bodum
Suppliers—ML Glass and Ningbo Worldcrown, which manufacture plastic and glass
drinkware—to manufacture products for sale in Starbucks stores in violation of the MPA
and 2008 Settlement Agreement.  *Id.*  By agreement of the parties and with leave of the
Court, Bodum then filed its Second Amended Complaint to correct the parties' names.
Doc. 28.  In its Second Amended Complaint, Bodum asserted the same three counts:  (1)
declaratory judgment, (2) product disparagement, and (3) breach of contract for violation
of the MPA and 2008 Settlement Agreement.  *Id.*

On May 22, 2020, on Starbucks's motion, the Court dismissed Bodum's claim for
breach of contract.  Doc. 57 at 10.  First, the Court concluded that Bodum failed to state a
claim for which relief could be granted with respect to the MPA because neither ML
Glass nor Ningbo Worldcrown is listed as a Bodum Supplier under the agreement.  *Id.* at
6–7.  The Court also rejected Bodum's argument that, under Washington law, the parties
modified the MPA to cover those two suppliers when Starbucks learned of the suppliers
through Bodum and subsequently audited them.  *Id.* at 8.  Because the auditing process
was "by definition a unilateral and preliminary step by Starbucks," the process could not
constitute a mutual agreement of the parties to amend the MPA.  *Id.*  And because Bodum
did not otherwise plead that the MPA was amended, the Court relied on the terms of the
MPA to conclude that Starbucks could deal with the suppliers as issue.  *Id.* at 8–9.

Second, the Court concluded that Bodum failed to adequately plead breach of
contract with respect to the 2008 Settlement Agreement.  *Id.* at 9.  The Court noted that
Bodum provided no facts to show that Starbucks procured products embodying Bodum
designs from non-Bodum suppliers; it provided no facts regarding which Bodum designs
were used or which products allegedly embody those designs; and it failed to provide any
information about the suppliers in dispute, the kinds of products they use, or the
particulars of their relationship with Starbucks.  *Id.*

On June 15, 2020, Starbucks filed its amended answer to Bodum's Second Amended Complaint, including a counterclaim for declaratory judgment that the voluntary recall is covered by the MPA and that Bodum should be responsible for the costs associated with that recall.  Doc. 66.  On June 17, 2020, following a pre-motion conference, Bodum filed the instant motions for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), and to dismiss Starbucks's counterclaim for declaratory relief pursuant to Federal Rule of Civil Procedure 12(f).  Doc. 68; Doc. 69.

### C. Bodum's Proposed Amended Complaint

In its proposed amended complaint, Bodum re-alleges that Starbucks breached both the MPA and the 2008 Settlement Agreement but adds new details regarding each contract.

As to the MPA, Bodum alleges that Starbucks is in breach because it used two Bodum Suppliers—ML Glass and Ningbo Worldcrown—to manufacture products for sale in Starbucks stores without Bodum as an intermediary.  Doc. 71-1 ¶¶ 117–18.  According to Bodum, while neither is listed as a Bodum Supplier in the Third Amendment, the parties purportedly "agreed" in 2008 that ML Glass and Ningbo Worldcrown are Bodum Suppliers under the MPA.  *Id.* ¶¶ 119–21.

Further, Bodum now alleges that Starbucks tracks its supply chain at the SKU level only, meaning that it cannot know the factories from which its suppliers order products that are placed in Starbucks stores unless it looks up a specific product in its system.  *Id.* ¶ 128.  Bodum asserts that Starbucks thus cannot monitor whether it purchases from a Bodum Supplier until after its purchase.  *Id.* ¶ 129.  And that, Bodum argues, renders the list of Bodum Suppliers—and the written-amendment requirement to change it—meaningless.  *See id.* ¶ 130.  According to Bodum, therefore, even if the Third Amendment requires a writing to add to the list of Bodum Suppliers, that requirement no longer applied, so ML Glass and Ningbo Worldcrown were Bodum Suppliers regardless of whether the parties entered a written amendment indicating as such.

6

As to the 2008 Settlement Agreement, Bodum asserts that Starbucks, either directly or through its affiliates, sold products that intentionally embody designs it had proposed to Starbucks.  *Id.* ¶ 110.  Bodum notes that it proposed several designs for double-walled glassware to Starbucks in connection with a chai tea holiday gift pack.  *Id.* ¶ 111.  According to Bodum, Starbucks has sold and continues to sell products that intentionally embody these designs online and in Starbucks stores in the United States, and it has used its affiliates to purchase and place those products in its stores.  *Id.* ¶¶ 111–13, 116.  Additionally, Bodum alleges that Starbucks sold copies of Bodum's designs in its Asian Pacific markets.  *Id.* ¶ 114.

## II.  MOTION FOR LEAVE TO AMEND THE COMPLAINT

### A. Legal Standard

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[a] court should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15 (a)(2).  This is a liberal standard, and "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *see also Ithaca Cap. Invs. I S.A. v Trump Panama Hotel Mgmt. LLC,* 450 F. Supp. 3d 358, 369 (S.D.N.Y. 2020) ("The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith").

Starbucks argues that the Court should not grant Bodum leave to file its Third Amended Complaint because its proposed claims for breach of contract would be futile, were unduly delayed, and would be unduly prejudicial to Starbucks.  Doc. 75 at 1–3.  The Court addresses each of Starbucks's objections in turn.

### B. Analysis

*1. Futility*

a. Standard for Futility

The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (quotation omitted). The non-moving party bears the burden of establishing the amendment's futility. *Ithaca Cap.*, 450 F. Supp.3d at 377. To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Agerbrink*, 155 F. Supp. 3d at 456.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant had acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 368 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks

and citations omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule

12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all

reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014).  Accordingly, when considering a motion to amend a pleading, a "court must

accept as true all well-pleaded facts and draw all reasonable inferences in the moving

party's favor."  *Agerbrink*, 155 F. Supp. 3d at 456.

        b. Futility of the Proposed Claim for Breach of the MPA

      Bodum offers three arguments for why its proposed claim for breach of the MPA

is not futile.  None convinces the Court.

      First, Bodum argues that the suppliers in dispute were grandfathered in as Bodum

Suppliers when the parties entered into the Third Amendment.  In its proposed amended

complaint, Bodum now asserts that the parties mutually agreed that ML Glass and

Ningbo Worldcrown were Bodum Suppliers around 2008—before the Third Amendment.

Doc. 71-1 at ¶ 120.  Bodum emphasizes that there was no requirement of a written mutual

agreement to add Bodum Suppliers until the Third Amendment.  Because the parties

agreed to add the disputed suppliers before then, Bodum argues, the Third Amendment's

requirement of a written mutual agreement does not apply.  Starbucks disagrees, arguing

that the plain language of the Third Amendment establishes that the list of suppliers in the

Third Amendment replaced—rather than added to—the prior list of Bodum Suppliers.

That is bolstered by the fact that the parties expressly listed some previous Bodum

Suppliers on the list of suppliers in the Third Amendment.

      The Court agrees with Starbucks.  Under Washington law, courts "follow the

objective manifestation theory of contracts," meaning that courts "attempt to determine

the parties' intent by focusing on the objective manifestations of the agreement, rather

than on the unexpressed subjective intent of the parties," focusing on "what was written."

*Hearst Commc'ns, Inc. v Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005).

Washington courts "generally give words in a contract their ordinary, usual, and popular

meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.*
And while courts in Washington use the surrounding circumstances and other extrinsic
evidence "to determine the meaning of specific words and terms used," they do not do so
"to vary, contradict or modify the written word." *Id.* (emphasis omitted) (quotation
omitted).

As Bodum concedes, neither ML Glass nor Ningbo Worldcrown is listed as a
Bodum Supplier in the Third Amendment.  *See* Doc. 76-1 at 15.  The Third Amendment
provides that the original list of Bodum Suppliers "is hereby deleted in its entirety and
replaced with" the attached list.  *See id.* at 12, 15.  Further, under the terms of the Third
Amendment, only those suppliers described in that new list constitute Bodum Suppliers.
*See id.* at 7, 12.  And as Bodum acknowledges, after the parties entered into the Third
Amendment, adding a supplier to that list requires a written mutual agreement.  *Id.* at 15.
Because Bodum fails to allege that the parties entered into such a written agreement,
neither ML Glass nor Ningbo Worldcrown is a Bodum Supplier under the MPA.  Doc. 57
at 8–9.  Accordingly, Bodum cannot recover under this theory.

Second, Bodum argues that, even if the terms of the Third Amendment require a
written mutual agreement, Starbucks waived that requirement.  According to Bodum's
proposed amended complaint, Starbucks failed to maintain a method to ensure that it was
honoring the restrictions under the MPA.  Doc. 71-1 ¶¶ 128–29.  Thus, according to
Bodum, that lack of tracking renders the written-agreement requirement meaningless,
thereby establishing Starbucks's intent to waive it.  Starbucks disagrees, arguing that
Bodum has not pointed to any unequivocal conduct by Starbucks that evinces an intent to
waive the written-amendment requirement.

The Court agrees again with Starbucks.  Washington courts have "historically
upheld the principle that procedural contract requirements must be enforced absent either
a waiver by the benefitting party or an agreement between the parties to modify the
contract." *Mike M. Johnson, Inc. v County of Spokane*, 78 P.3d 161, 167 (Wash. 2003);

*see also Wiley v Hart*, 132 P. 1015, 1019 (Wash. 1913) (holding that owner could not be liable for extra costs where owner had not waived a requirement that the architect provide a written order).  Under Washington law, "[a] party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct." *Mike M. Johnson, Inc.*, 78 P.3d at 166.  "Waiver by conduct . . . requires unequivocal acts . . . evidencing an intent to waive."  *Id.* at 166–67 (quotation omitted).  As such, "waiver will not be inferred from doubtful or ambiguous factors."  *224 Westlake, LLC v Engstrom Properties, LLC*, 281 P.3d 693, 702 (Wash. Ct. App. 2012) (quoting *Jones v. Best*, 950 P.2d 1, 6 (Wash. 1998)).

Here, Starbucks's actions do not constitute waiver.  To invoke waiver, Bodum must allege that Starbucks sought to waive the specific procedural requirement in dispute.  *See Mike M. Johnson, Inc.*, 78 P.3d at 166–67.  Bodum does not do that.  Instead, Bodum argues that Starbucks waived the written-amendment requirement because it had no way to track its compliance with the MPA.  The inference that Bodum would have the Court draw, however, is not reasonable.  *See Iqbal*, 556 U.S. at 678.  Assuming, as the Court must at this procedural juncture, that Starbucks did not verify its suppliers at the time of purchase, it could have verified it suppliers at a later point.  Because waiver requires an absence of doubt or ambiguity, the Court concludes that Bodum has not sufficiently pleaded that Starbucks waived the MPA's written-agreement requirement.  *See 224 Westlake, LLC*, 281 P.3d at 702.

Third, Bodum argues that Starbucks's conduct constituted an anticipatory breach of the MPA's written-amendment requirement.  Similar to its waiver argument, Bodum argues that Starbucks manifested an intent not to perform its duties under the contract because it could not keep track of whether the suppliers it transacted with were Bodum Suppliers.  Thus, Bodum contends, Starbucks breached, and Bodum need not honor the written-agreement requirement.  Starbucks disagrees, noting that anticipatory breach excuses the non-breaching party from its duty to perform a contract.  Here, Starbucks

11

argues, following the written-amendment requirement is simply a procedural mechanism, not the actual performance of Bodum's contractual obligations, so Bodum could not avoid that requirement and unilaterally determine what suppliers constitute Bodum Suppliers for the purpose of the MPA.  Further, Starbucks contends that, even if Bodum could assert a claim based on anticipatory breach, it cannot recover, as Starbucks did not unequivocally declare that it did not intend to fulfill its contractual duty.

The Court agrees with Starbucks.  Under Washington law, "an anticipatory breach"—also known as an anticipatory repudiation—"occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time of performance." *Wallace Real Estate Inv., Inc. v. Groves*, 881 P.2d 1010, 1019 (Wash. 1994) (citing *Lovric v. Dunatov*, 567 P.2d 678, 682 (Wash. Ct. App. 1977)).  As such, an intent to repudiate may be "circumstantially manifested by conduct."  *Grant Cnty. Port Dist. No. 9 v. Washington Tire Corp.*, 349 P.3d 889, 894 (Wash. Ct. App. 2015) (quotation omitted).  However, anticipatory breach requires conduct "indicating distinctly and unequivocally that [the promisor] either will not or cannot substantially perform any of [its] contractual obligations."  *Wallace Real Estate*, 881 P.2d at 1019 (quotation omitted).  Accordingly, a court will not infer anticipatory breach from doubtful, indefinite, or ambiguous statements or actions suggesting that the performance may not take place.  *See id.*; *see also CKP, Inc. v. GRS Const. Co.*, 821 P.2d 63, 74 (Wash. Ct. App. 1991) (holding that threat to withhold payment until after contract was modified constituted an anticipatory breach).  One party's anticipatory breach excuses the other party's performance under the contract and gives rise to a claim for damages for breach of contract.  *Washington Tire Corp.*, 349 P.3d at 894; *see also Turner v. Gunderson*, 807 P.2d 370, 375 (Wash. Ct. App. 1998).

Here, Bodum does not seek to excuse its entire performance under the MPA. Instead, Bodum essentially argues that it is excused from abiding by the written-amendment requirement while still requiring performance under the rest of the MPA.

Such a claim sounds in waiver, not anticipatory breach.  *See Mike M. Johnson, Inc.*, 78 P.3d at 167–68 (discussing claim based on waiver of procedural obligations under contract).  Even if such a claim sounded in anticipatory breach, Starbucks's actions, as pleaded, do not make out that claim.  For the same reasons as discussed in response to Bodum's waiver argument, Starbucks's alleged failure to track its products at the time of purchase does not "indicat[e] distinctly and unequivocally that [Starbucks] either will not or cannot substantially perform any of [its] contractual obligations."  *Wallace Real Estate*, 881 P.2d at 1019 (quotation omitted).  As such, the allegations in Bodum's proposed amended complaint do not rise to anticipatory breach.  *See id.*

Thus, the Court concludes that Bodum's proposed amended complaint fails to state a claim for breach of the MPA.  Accordingly, the Court does not address the remaining factors under Rule 15 as to this claim.

### c. Futility of the Proposed Claim for Breach of the 2008 Settlement Agreement

Bodum argues that its claim for breach of the 2008 Settlement Agreement is not futile because it has adequately pleaded all the elements of a breach-of-contract claim under Illinois law.  Under Illinois law, a claim for breach of contract requires that (1) a contract existed, (2) the plaintiff performed its obligations under the contract, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach.  *Davis v. Davis*, 144 N.E.3d 649, 654 (Ill. App. Ct. 2019).

In its proposed amended complaint, Bodum now identifies specific glassware designs that it proposed to Starbucks and asserts that Starbucks in turn sold products that copied those designs.  Doc. 71-1 ¶¶ 111–14.  Bodum also contends that Starbucks used its Asian affiliates—who are not subject to the restrictions under the 2008 Settlement Agreement—to circumvent the agreement, *id.* ¶¶ 110, 116, thereby violating the implied covenant of good faith and fair dealing, *id.* ¶¶ 156–57.  Thus, Bodum argues, Starbucks breached the 2008 Settlement Agreement both directly and indirectly.  *Id.* ¶ 155.

Bodum is correct that its proposed claim for breach of the 2008 Settlement Agreement is not futile—at least as to Starbucks's alleged direct actions.  In its proposed amended complaint, Bodum asserts that Starbucks directly sold products that intentionally embody Bodum designs, *id.* ¶¶ 110–11, noting that some of these products are being sold "directly in Starbucks stores or on online platforms," *id.* ¶¶ 112–13.  Thus, at a minimum, Bodum has sufficiently pleaded that Starbucks violated the terms of the 2008 Settlement Agreement through those sales.  *Iqbal*, 556 U.S. at 678; *see also* Doc. 57 9–10.

Likewise, Bodum can recover based on the actions of some of Starbucks's affiliates.  As an initial matter, the Court notes that Starbucks misstates Bodum's position regarding its affiliates.  Bodum does not argue that those affiliates are bound by the 2008 Settlement Agreement; instead, Bodum alleges that Starbucks used its affiliates to circumvent the restrictions against selling certain designs.  Thus, the question is not whether Starbucks's affiliates breached the 2008 Settlement Agreement.  Instead, the question is whether Starbucks breached the 2008 Settlement Agreement by relying on the actions of its affiliates.

As to that question, Bodum alleges that Starbucks used its affiliates to purchase products that copied Bodum designs and sold those products in Starbucks's stores.  Doc. 71-1 at ¶ 116.  Critically, the 2008 Settlement Agreement does not distinguish between whether Starbucks procured those designs directly or indirectly through its affiliates.  *See Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("A court will first look to the language of the contract itself to determine the parties' intent.").  Instead, it simply prohibits Starbucks from intentionally selling non-Bodum products that embody Bodum's product designs.  Doc. 76-2 at 2.  Thus, to the extent that Starbucks obtained prohibited products from its affiliates and then sold them in its own stores, Starbucks breached the 2008 Settlement Agreement.

However, Starbucks's affiliates are not parties to the 2008 Settlement Agreement, and therefore were under no obligation to abide by the agreement's terms.  Accordingly, to the extent that Starbucks relied upon its affiliates to sell the designs in dispute in the affiliates' stores, Bodum fails to state a claim.  *Iqbal*, 556 U.S. at 678.

Bodum also attempts to characterize Starbucks's recruitment of its affiliates as a breach of the implied covenant of good faith and fair dealing.  That argument is futile.  Under Illinois law, "[e]very contract contains an implied covenant of good faith and fair dealing."  *McCleary v. Wells Fargo Sec., L.L.C.*, 29 N.E.3d 1087, 1093 (Ill. App. Ct. 2015).  This covenant "ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract."  *Voyles v Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996)).  Critically, a claim for breach of the covenant of good faith and fair dealing "arise[s] when one party is given broad discretion in performing its obligations under the contract."  *McCleary*, 29 N.E.3d at 1093.  Accordingly, to plead a claim for "breach of the covenant of good faith and fair dealing, a plaintiff must plead existence of contractual discretion."  *Id.* (quotation omitted).  "Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised 'reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'"  *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. Ct. 2004) (quoting *Resol. Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (Ill. App. Ct. 1993)).

Here, Bodum lacks a basis for asserting a claim based on the implied covenant of good faith and fair dealing.  Such a claim requires *both* a contractual obligation and broad discretion.  *McCleary*, 29 N.E.3d at 1093.  To the extent that Starbucks improperly sold products in its own stores, it had no discretion to do so; to the extent that Starbucks relied

upon its affiliates to sell the products in their stores, there was no obligation under the plain language of the 2008 Settlement Agreement preventing Starbucks from doing so. Further, the 2008 Settlement Agreement plainly releases Starbucks's affiliates from any of the agreement's obligations, indicating that the parties reasonably expected at the time the contract was drafted that the affiliates would not be prohibited from purchasing non-Bodum products that copied Bodum designs. *See Voyles*, 751 N.E.2d at 1131. Thus, there could be no violation here of the implied covenant of good faith and fair dealing.

In sum, the Court concludes that the allegations regarding products not sold by Starbucks are futile. The remaining portions of Bodum's proposed claim for breach of the 2008 Settlement Agreement are not futile, and the Court now turns to the remaining Rule 15(a)(2) factors for those non-futile portions.

### 2. Undue Delay

Starbucks argues that Bodum's proposed claim for breach of the 2008 Settlement Agreement is unduly delayed, contending that Bodum could have obtained the necessary information to amend its complaint much sooner but failed to do so. Bodum argues that it sought leave to amend shortly after it received information from Starbucks regarding which products it ordered from Bodum Suppliers, and it filed the instant motion within a month of the Court's order dismissing its prior claim for breach of contract.

In this Circuit, mere delay, "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Contrera v Langer,* 314 F. Supp. 3d 562, 566 (S.D.N.Y. 2018) (internal quotation mark omitted) (quoting *State Tchrs Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Although the party seeking to amend its pleading must explain its delay, *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011), the party opposing the amendment carries the burden of showing undue prejudice or bad faith, *Contrera*, 314 F. Supp. 3d at 567. In opposing a motion for leave to amend a complaint, "[s]imply alleging that the plaintiff could have moved to amend earlier than she did . . . is insufficient to demonstrate

undue delay." *Agerbrink*, 155 F. Supp. 3d at 452; *see also Richardson Greenshields Sec., Inc. v. Lau*, 842 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where courts granted leave to amend after delays ranging from two to five years). Similarly, a court will not deny a motion to amend simply because a plaintiff now "alleg[es] facts that were previously within [its] knowledge." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012).

The Court agrees with Bodum that its amended complaint is not unduly delayed. As an initial matter, Bodum has met its burden in providing a satisfactory explanation for its delay: that it promptly sought leave to amend after it obtained information from Starbucks regarding what products Starbucks ordered from Bodum Suppliers. *See Park B. Smith*, 811 F. Supp. 2d at 779. From there, Starbucks bears the burden of showing that the delay occurred as a result of dilatory motive or bad faith. *Contrera*, 314 F. Supp. 3d at 567. However, Starbucks asserts merely that Bodum could have brought its claims sooner and could have obtained information regarding those suppliers before it received the information from Starbucks. As such, it fails to assert any bad-faith motive. *Agerbrink*, 155 F. Supp. 3d at 452–54 (granting leave to amend where defendants argued plaintiff could have brought a claim in a previous filing ten-and-a-half months before); *Dilworth*, 914 F. Supp. 2d at 460 (rejecting defendant's argument that leave should be denied because plaintiffs previously knew or should have known alleged facts in amended complaint). Accordingly, the Court concludes that Bodum's amended complaint is not unduly delayed.

### 3. Unduly Prejudicial

Starbucks also argues that the proposed claim for breach of the 2008 Settlement Agreement is unduly prejudicial, asserting that it will incur additional costs through further motion practice and discovery, and that the litigation will be delayed substantially. Further, Starbucks contends that Bodum's proposed claim is prejudicial because it arises from facts that are distinct from the rest of the action. Bodum disagrees, arguing that its

claim turns on information that has already been exchanged and noting that Starbucks has known about Bodum's allegations since September 2019.  Further, Bodum notes that fact discovery is still ongoing, with most depositions not having been completed, and any additional discovery, if needed, would be minimal.

Denying leave to amend a complaint requires not just prejudice but *undue* prejudice.  *Agerbrink*, 155 F. Supp. 3d at 454.  The defendant bears the burden of showing that undue prejudice would result from granting leave to amend.  *Id.*  To determine whether a defendant is unduly prejudiced by an amended complaint, a court must consider whether the proposed amendment "would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).  Additionally, courts consider the procedural posture of the case in determining whether an amendment is prejudicial.  *Id.* at 454–55 (finding defendant was not unduly prejudiced where plaintiff sought leave to amend before close of discovery).  Further, the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial.  *Id.* at 455; *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (granting leave where defendants argued prejudice resulted "solely because of the time, effort, and money they expended in litigating this matter").

The Court agrees that the proposed amendment is not unduly prejudicial.  Bodum has filed its motion well before the close of discovery, as the majority of depositions are still outstanding.  *Agerbrink*, 155 F. Supp. 3d at 455–56.  And although the amendment may warrant additional discovery, it should not significantly prolong the resolution of the action.  *Id.*  Further, as Bodum notes, Starbucks has been on notice of the substance of this proposed claim since at least September 2019, when Bodum filed its Second

Amended Complaint containing a claim for breach of contract based on the 2008

Settlement Agreement.  *See* Doc. 28.  Additionally, Bodum's amended factual allegations

rely on information provided by Starbucks.  And although Starbucks notes that Bodum's

proposed amended complaint will require it to spend more time and money on litigation,

that alone does not constitute undue prejudice.  *See Block*, 988 F.2d at 351.

      Starbucks also points to cases in which courts in this District have denied leave to

amend where defendants had already filed a motion to dismiss in response to a complaint.

*See Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d 501, 503 (S.D.N.Y. 2007);

*PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 765 (S.D.N.Y. 1995).  But those cases

are readily distinguishable.  In *Bay Harbour*, the court denied the plaintiff's request to

amend its complaint four days before a motion to dismiss was to be argued, noting that it

would be unfair for defendants to start over with new allegations after preparing

significantly for oral argument.  474 F. Supp. 2d at 503.  Similarly, in *PI, Inc.*, the court

denied the plaintiff leave to amend its complaint when it sought leave after oral argument

on a motion to dismiss for its current complaint but before the court's ruling on that

motion, noting that the plaintiff's actions were simply a delaying tactic to avoid dismissal

of the entire action.  907 F. Supp. at 765.  Thus, the courts in those cases denied leave

where a motion to dismiss was still pending and the plaintiffs sought to amend as a delay

tactic or a means to avoid an unfavorable outcome.

      Here, by contrast, the Court already issued an order on Starbucks's motion to

dismiss.  Doc. 57 at 10.  Further, in dismissing Bodum's claim for breach of contract

without prejudice, the Court afforded Bodum the opportunity to replead the claim for

breach of contract and cure any prior deficiencies.  Accordingly, the Court concludes that

Bodum's amended complaint is not unduly prejudicial, and it may amend its complaint to

add its claim for breach of the 2008 Settlement Agreement.  *See Dilworth*, 914 F. Supp.

2d at 473–74 (granting leave to amend after dismissing claim in second amended

complaint).

### III.   MOTION TO DISMISS COUNTERCLAIM FOR DECLARATORY JUDGMENT

#### A.  Legal Standard

Federal Rule of Civil Procedure 12(f) is the proper procedural vehicle for a motion to dismiss a claim prohibited by the mirror image doctrine.  Under Rule 12(f), a court may strike from a pleading "any redundant . . . matter."  Fed. R. Civ. P. 12(f).  "When a counterclaim is merely the 'mirror image' of an opposing party's claim and the counterclaim serves no independent purpose, the counterclaim may be dismissed."  *Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, No. 11 Civ. 3633 (LTS), 2013 WL 247839, at *2 (S.D.N.Y. Jan. 22, 2013) (citing *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822 (HB), 2018 WL 4974823, at *3 (S.D.N.Y. Nov. 24, 2008)).  When ruling on a motion to dismiss pursuant to Rule 12(f), the Court "must consider whether a case or controversy would still exist in connection with the counterclaim if the court entered a judgment dismissing the opponent's claim."  *Id.* (citing *Arista Records LLC*, 2008 WL 4974823, at *3).

#### B. Analysis

Bodum argues that the French Press recall is not covered by the MPA, and that Starbucks therefore is responsible for the costs of the recall.  Starbucks argues that the costs of the recall are Bodum's responsibility pursuant to the terms and conditions of the MPA.

A close examination of the claims in the respective actions reveals that Starbucks's counterclaim for declaratory judgment is a mirror image of Bodum's claim for declaratory judgment.  As Starbucks concedes, Bodum's claim and its counterclaim both seek a judicial determination as to who must pay for the product recall.  Doc. 74.  The two claims are redundant because they request a judicial determination of the same question regarding the same issue, and a determination of Bodum's claim would

necessarily resolve Starbucks's counterclaim.  *Worldwide Home Prods., Inc.*, 2013 WL
247839, at *2.  Therefore, the counterclaim does not serve an independent purpose.  *Id.*

Starbucks counters that the claim and counterclaim are different because its
counterclaim asks that the Court enter a judgment as to the amount Bodum owes
Starbucks, while Bodum's claim for declaratory relief does not seek a determination of
the amount owed for reimbursement.  Starbucks reasons that this difference removes the
possibility of the claims being mirror images because, even if the court rules against
Bodum, there would still be an open case or controversy as to the amount Starbucks is
owed.  Bodum asserts that, if Starbucks is entitled to damages, then it can be awarded
those damages on its second counterclaim, wherein it brings an affirmative claim for
breach of Section 9.8 of the MPA.

Starbucks misunderstands the application of the "mirror image" doctrine, and the
Court agrees with Bodum that only one question is being raised in both the claim and
counterclaim.  The awarding of a specific amount of damages does not change the fact
that the same judicial determination would have to be made in addressing both Bodum's
claim and Starbucks's counterclaim.

Starbucks cites *Five Star Development Resort Communities LLC v. iStar RC
Paradise Valley LLC*, No. 09 Civ. 2085 (LTS), 2012 WL 1003557 (S.D.N.Y. Mar. 26,
2012) to support its claim that seeking a judgment as to amount owed for the recall
should be considered an independent purpose.  However, as Bodum correctly asserts, the
parties in *Five Star* sought two different declarations.  In *Five Star*, the plaintiff's claim
sought a declaration that they were not in default and that the defendant is prohibited
from holding them in default, while the defendant's counterclaim sought a declaration
that the plaintiff was in default and that the defendant is entitled to exercise default
remedies specified in their loan documents.  *Id.* at *4–5.  The court decided that
determination as to whether the defendant is entitled to exercise default remedies under
specified documents is a controversy that would still exist if the plaintiff's claim

regarding the declaration that they were not in default were denied.  *Id.* at \*5.  The declaration that a party was not in default and the declaration that a party is entitled to exercise specific default remedies are two separate issues and therefore not mirror images of one another.

Here, by contrast, both parties seek the same declaration as to who is responsible for the cost of the recall.  Any resulting damages would not constitute a separate case or controversy, as they would be resolved with the adjudication of Bodum's claim for declaratory relief.  As such, Starbucks's counterclaim for declaratory relief must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Bodum's motion for leave to amend its complaint is GRANTED in part and DENIED in part.  Bodum is permitted to amend its Second Amended Complaint in accordance with its proposal, provided that it remove the claim for breach of the MPA and remove the portion of the breach of the 2008 Settlement Agreement addressing products sold in Starbucks's affiliates' stores.  Bodum's motion to dismiss Starbucks's counterclaim for declaratory judgment is GRANTED.  The parties are directed to provide the Court with a joint letter setting forth the status of discovery and a schedule for the completion of discovery by October 30, 2020.  The Clerk of Court is respectfully directed to terminate the motions.  Doc. 68; Doc. 69.

It is SO ORDERED.

Dated:    October 16, 2020
            New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

22